**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**TODD WILSON,**

      **Petitioner,**

    **v.**                                **CASE NO. 2:05-cv-836**

                                                **JUDGE GRAHAM**

**WARDEN, NOBLE CORRECTIONAL
          INSTITUTION,**                  **MAGISTRATE JUDGE KING**

      **Respondent.**

**<u>REPORT AND RECOMMENDATION</u>**

      Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  This matter is before the Court on the instant petition, respondent's return of writ, petitioner's traverse, the exhibits of the parties, and petitioner's motions for summary judgment and judgment on the pleadings, Doc. Nos. 8 and 9.

      For the reasons that follow, the Magistrate Judge **RECOMMENDS** that petitioner's motion for summary judgment and motion for judgment on the pleadings, Doc. Nos. 8 and 9, be **DENIED** and that this action be **DISMISSED.**

**I.  FACTS and PROCEDURAL HISTORY**

      The facts and procedural history of this case are summarized by Ohio's Fourth District Court of Appeals as follows:

> On October 7, 2003, Detective Deron Alkire of the Washington County Sheriff's Office was on duty investigating a burglary.  Det. Alkire was driving an unmarked sheriff's vehicle to the homes of witnesses to interview them in furtherance of the burglary investigation.
>
> The same evening, Wilson and his friend, Jared Gillespie, met at Gillespie's home for drinks. After a couple of beers, Wilson and

Gillespie went to the Valley Inn bar in Beverly, Ohio and continued drinking. When Wilson took Gillespie home, Gillespie directed Wilson to take County Road 109. Gillespie testified that CR 109 is the best route from the Valley Inn to his home for a driver who has been drinking, because the driver is less likely to encounter a police officer on CR 109 than on 339.

As Det. Alkire searched for a witness' home on CR 109, Wilson crossed a double yellow line and passed him. Det. Alkire immediately activated his siren and lights in order to stop Wilson and warn him about reckless driving. The vehicle's red and blue strobe lights were mounted to the visor inside the car. The siren Det. Alkire used was the same type and volume siren used on marked sheriff's vehicles. Local resident Roger Sampson heard the siren from inside his home, which sits one hundred to one hundred fifty yards off CR 109.

Each time Det. Alkire caught up to Wilson, Wilson sped up and increased the distance between their vehicles. Wilson drove between eighty and eighty-five miles per hour on the straight portions of the road, and forty to sixty miles per hour in the turns. Wilson drove left of center numerous times, even in curves and on hills that obstructed the view of oncoming traffic. Wilson also drove on the berm, and at one point, his tires left the roadway entirely. A number of structures and objects were located near the side of the road. In particular, there was a barn located within ten feet of the road, oil well pump jacks, fences, power lines, gas meters, and an electric substation close to the road.

CR 109 ends at the first stop sign the vehicles encountered after Det. Alkire began the chase. Wilson slowed to a stop approximately forty yards before the stop sign. Wilson did not attempt to flee on foot. When Det. Alkire approached the car, he could smell an odor of alcohol from Wilson's window. Wilson cooperated with Det. Alkire, and admitted that he had been drinking. He stated that he did not stop because he had been in an altercation with a gang at the bar, and he thought the gang members were chasing him.

The second officer who responded, Deputy Underwood, administered field sobriety tests, which Wilson failed. Wilson refused to take a breathalyzer test. Deputy Underwood arrested Wilson for operating a motor vehicle while under the influence of alcohol.

Gillespie told Det. Alkire that he was "terrified" during the chase, and

2

that he asked Wilson what he was doing and why. At the trial, however, Gillespie testified that he never heard Det. Alkire's siren, that he did not tell Det. Alkire that he was frightened, and that he thought the vehicle following Wilson's was a volunteer firefighter's vehicle.

The Washington County Grand Jury indicted Wilson on one count of willfully operating a motor vehicle to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop, a violation of R.C. 2921.331(B). The indictment included the enhancing specification contained in R.C. 2921.331(C)(5)(a)(ii), charging that the operation of the vehicle caused a substantial risk of serious physical harm to persons or property. The indictment did not include the specification contained in R.C. 2921.331(C)(5)(a)(i), which enhances the offense when offenders actually cause physical harm to persons or property. Wilson pled not guilty to the fleeing and eluding charge and specification, and the case proceeded to a jury trial.

At the close of the State's case, Wilson moved for a judgment of acquittal on the enhancing specification. Wilson asserted that the State failed to introduce evidence that his conduct "caused any serious physical harm to anybody, mailboxes, nothing," and that the State failed to prove that he created a substantial risk of physical harm. The court found that the State presented circumstantial evidence that Wilson created a substantial risk of serious physical harm, but that the State presented no evidence that Wilson proximately caused serious physical harm to persons. Therefore, though the State did not charge Wilson with the R.C. 2921.331(C)(5)(a)(i) specification, the court stated that it granted Wilson's motion on the specification related to causing physical harm.

The court specifically denied Wilson's motion on the specification related to whether Wilson created a substantial risk of serious physical harm. In its instructions to the jury, the court instructed the jury to determine whether Wilson's operation of his car "was a proximate or a direct cause of a substantial risk of serious physical harm to persons or property." Wilson did not object to the jury instructions.

The jury found Wilson guilty on the fleeing and eluding charge and on the enhancing specification. The trial court found that the shortest prison term would demean the seriousness of his offense and not adequately protect the public. Therefore, the trial court sentenced

3

Wilson to two years in prison. Wilson did not object.

Exhibit 6 to Return of Writ.  Represented by new counsel, petitioner filed a timely appeal of his conviction and sentence to the Fourth District Court of Appeals.  He asserted the following assignments of error:

> 1.  The trial court erred when it permitted the State to introduce the testimony of an officer, who was not in a properly marked vehicle or uniform at the time the officer forced Mr. Wilson's vehicle to stop, and who was therefore not competent to testify, under R.C. 4549.13 through 4549.16 and Evid.R. 601(C).... The admission of this evidence deprived Mr. Wilson of his right to a fair trial and due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution.

> 2.  The trial court erred when it instructed the jury on the elements of the enhancing specification.... This error amounted to plain error, under Crim. R. 52(B), and deprived Mr. Wilson of his right to a fair trial, as guaranteed by the Due Process clauses of the Fifth and Fourteenth Amendments to the United States Constitution, and Section 16, Article I, of the Ohio Constitution.

> 3.  The trial court erred when it entered the judgment of conviction in the absence of sufficient evidence to establish Mr. Wilson's guilt of the specification, and when Mr. Wilson's conviction of the underlying offense of fleeing and eluding was against the weight of the evidence.... these errors deprived Mr. Wilson of his right to due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution.

> 4.  The trial court erred when it imposed a term of incarceration that exceeded the minimum term of incarceration... the two-year sentence imposed was not consistent with sentences imposed for similar crimes committed by similar offenders, and the sentence was improperly based on facts that were not found by the jury, in contravention of *Blakely v. Washington* (2004), – U.S.–, 124 S.Ct. 2531.

4

Exhibit 3 to Return of Writ.  On February 22, 2005, the state appellate court affirmed the judgment

of the trial court.  Still represented by counsel, petitioner filed a timely appeal of the appellate

court's decision to the Ohio Supreme Court.  He asserted the following propositions of law:

> 1.   Consistent with the Sixth Amendment to the United States
> Constitution, a trial court may not impose a term of incarceration
> which exceeds the statutory minimum term of imprisonment upon an
> offender who has never before served a prison term, unless the
> statutory criteria specified in R.C. 2929.14(B) are proven beyond a
> reasonable doubt.  *Blakely v. Washington, [supra]*.

> 2.  When the state fails to present sufficient evidence to prove all the
> elements of an enhancing specification by proof beyond a reasonable
> doubt, the defendant's felony conviction and sentence based on that
> specification violates the Due Process Clauses of the Fifth and
> Fourteenth Amendments to the United States Constitution, and
> Section 16, Article I of the Ohio Constitution.  *Tibbs v. Florida*
> (1982), 457 U.S. 31; *Jackson v. Virginia* (1979), 443 U.S. 307.

> 3.  A trial court commits plain error when it instructs the jury on an
> element of an enhancing specification, after having found there was
> insufficient evidence to support that element, and when it erroneously
> combines two separate enhancing specifications into one.  Such an
> error during the jury instructions deprives the defendant of his right
> to due process of law, as guaranteed by the Fifth and Fourteenth
> Amendments to the United States Constitution, and Section 16,
> Article I of the Ohio Constitution.

Exhibit 7 to Return of Writ.  On June 29, 2005, the Ohio Supreme Court ordered that the case be

"held" for decision in other cases raising issues under *Blakely v. Washington, supra*.  Exhibit 9 to

Return of Writ.[1]  On May 3, 2006, the Ohio Supreme Court sustained petitioner's first proposition

---

[1]  On February 27, 2006, the Ohio Supreme Court rendered its decision on this issue.
*State v. Foster*, 109 Ohio St.3d 1 (Ohio 2006).

5

of law only, and remanded the case to the state appellate court for re-sentencing, *In re Ohio Criminal Sentencing Statutes Cases*, – N.E.2d –, 2006 WL 1208108 (Ohio May 3, 2006); however, petitioner does not raise a *Blakely* issue in these habeas corpus proceedings.

On September 9, 2005, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. Sufficiency of the evidence.
>
> A violation of the due process clauses of the Fifth and Fourteenth Amendments. Conviction and sentence is [sic] based upon an essential element of an enhancing specification that the trial court granted a motion for judgment of acquittal upon. [sic] Tr. P. 261. It is plain on the face of the record that the State failed to prove beyond a reasonable doubt each and every element necessary to constitute the crime charged. The petitioner is being held in custody in violation of the Constitution and the laws of the United States of America.
>
> 2. Jury Instructions.
>
> A violation of the Fifth, Sixth, and Fourteenth Amendments. The trial court committed plain and prejudicial error by constructively amending the charging indictment. The trial court also gave instructions on an element of the enhancing specification that it had previously granted a motion for judgment of acquittal on. The trial court's action to broaden the charge in the indictment denied petitioner a meaningful opportunity to defend.

It is the position of the respondent that claim one is without merit and that claim two is procedurally defaulted.

## II. CLAIM ONE

In claim one, petitioner asserts that the evidence was constitutionally insufficient to sustain

his convictions.  The state appellate court rejected this claim in relevant part as follows:

> Wilson contends that his conviction on the specification that he created a substantial risk of serious physical harm to persons or property is not supported by sufficient evidence, and that his conviction for the underlying offense of fleeing and eluding is contrary to the manifest weight of the evidence.
>
> When reviewing a conviction to determine if it is supported by sufficient evidence, the appellate court's role " * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. *See, also, Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560.
>
> This test raises a question of law and does not allow the court to weigh the evidence. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Rather, this test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson,* 443 U.S. at 319. Accordingly, the weight given to the evidence and the credibility of witnesses are issues primarily for the trier of fact. *State v. Thomas* (1982), 70 Ohio St.2d 79, 79-80, 434 N.E.2d 1356; *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. Whether the evidence supporting a defendant's conviction is direct or circumstantial does not bear on our determination. "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." *Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 at paragraph one of the syllabus.
>
> Here, the record contains direct and circumstantial evidence that Wilson created a substantial risk of serious physical harm to persons or property when he fled from Det. Alkire. Specifically, the record contains evidence that he drove left of center in curves, in blind curves, and on hills when there was a possibility that oncoming traffic was approaching. He passed Det. Alkire's vehicle over a double yellow line. He drove up to eighty-five miles per hour, and he

drove on the berm. He drove in this manner with a passenger in his vehicle, in an area where there were numerous buildings and other types of property located near the road. Upon reviewing this evidence in the light most favorable to the State, we find that a reasonable trier of fact could have found that Wilson created a substantial risk of serious physical harm to persons or property.

\*\*\*

Wilson asserts that... the State did not produce any evidence that he actually heard the siren and ignored it. Additionally, Wilson's passenger, Gillespie, testified that he never heard the siren.

R.C. 2921.331(B) provides: "No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." Evidence that a driver accelerated as officers pursued provides credible evidence of the elements of fleeing and eluding. *See State v. Franklin,* Cuyahoga App. No. 81426, 2003-Ohio-2649, at ¶¶ 40-41. In addition, intoxication provides evidence that a suspect acted consistently with a motive for fleeing and eluding. *See State v. Newsome,* Belmont App. No. 02-BE-28, 2003-Ohio-3284, at ¶ 26.

Here, the State produced evidence that Det. Alkire activated his siren and lights immediately after Wilson passed him. The siren was no different than the sirens normally used in marked police cars. It was loud enough that a witness, Roger Sampson, heard the siren from inside his house, which sits approximately 150 yards off the roadway. Additionally, Det. Alkire testified, without objection, that immediately after the chase, Gillespie told Det. Alkire he was "absolutely terrified" during the chase. Det. Alkire further testified that each time he caught up to Wilson's vehicle, Wilson sped up and got away from Det. Alkire. Det. Alkire pursued Wilson for approximately four miles, and reached speeds of approximately eighty-five miles per hour. Gillespie testified that the particular route he and Wilson took from the bar to his home was the best route for someone who had been drinking, because they had a lesser chance of encountering a police officer on that route. Finally, the evidence showed that Wilson was intoxicated during the chase.

Based upon our review of all the evidence and reasonable inferences

8

that we can draw from it, we cannot say that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that we must overturn Wilson's conviction for fleeing and eluding and grant a new trial. Specifically, the record contains substantial evidence upon which the jury could conclude that Wilson willfully operated his car to elude Det. Alkire after he heard Det. Alkire's siren and saw his flashing lights.

Thus, we find that Wilson's conviction for fleeing and eluding is not contrary to the manifest weight of the evidence, and that sufficient evidence supports Wilson's conviction on the specification that he created a substantial risk of serious physical harm to persons or property as he fled from Det. Alkire. Accordingly, we overrule Wilson's third assignment of error.

Exhibit 6 to Return of Writ.

The decision of the state appellate court is presumed to be correct:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(d), (e).

A state court's determination is contrary to federal law when the state

> court arrives at a conclusion opposite to that reached by the Supreme
> Court on a question of law or on indistinguishable facts. *Williams v.*
> *Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389
> (2000). A state court's decision is an unreasonable application of
> federal law when the state court correctly identified the applicable
> legal principle from Supreme Court precedent, but applied that
> principle to the facts before it in an unreasonable manner. *Id.* at 413,
> 120 S.Ct. 1495.

*Maldonado v. Wilson*, 416 F.3d 470, 475 (6th Cir. 2005). Petitioner has failed to establish that the

state appellate court's decision denying this claim is so unreasonable as to justify federal habeas

corpus relief.

Before a criminal defendant can be convicted consistent with the United States Constitution,

there must be sufficient evidence to justify a reasonable trier of fact to find guilt beyond a reasonable

doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). To determine whether the evidence was

sufficient to support a conviction, this Court must view the evidence in the light most favorable to

the prosecution. *See Wright v. West*, 505 U.S. 277, 296 (1992)(citing *Jackson*, at 319). The

prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id.*

(quoting *Jackson,* at 326). "[A] reviewing court 'faced with a record of historical facts that supports

conflicting inferences must presume - even if it does not affirmatively appear in the record - that the

trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that

resolution.'" *Id.* (quoting *Jackson*, at 326). For example the trier of fact is entitled to disbelieve a

defendant's uncorroborated and confused testimony, and even to discount a defendant's credibility

on account of a prior felony conviction. *Id*.

Petitioner does not dispute the factual findings of the state appellate court. For the reasons

discussed by the state appellate court, this Court likewise agrees that, when viewing all of the

evidence in the light most favorable to the prosecution, *see Jackson v. Virginia, supra*, the evidence is constitutionally sufficient to sustain petitioner's convictions.

Claim one is without merit.

### III.  CLAIM TWO:  PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration.  28 U.S.C. §2254(b), (c).  If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies.  *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam)*; *Picard v. Connor,* 404 U.S. 270, 275-76 (1971).  If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error.  *Murray v. Carrier*, 447 U.S. 478, 485 (1986); *Engle v. Issac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule."  *Id.*  Second, the Court must determine whether the state courts actually enforced the state procedural sanction.  *Id.*  Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose

11

review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

In claim two, petitioner asserts that he was denied the right to present a defense and was otherwise prejudiced by the trial court's jury instructions. A claim of denial of the right to present a defense has never been presented to the state courts. Further, any attempt to now present such claim to the state courts would be barred under the doctrine of *res judicata*. *See State v. Cole*, 2 Ohio St.3d 112 (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St. 2d 175 (1967). The state courts were never given an opportunity to enforce the procedural rule due to the nature of petitioner's procedural default. The Court deems the first and second parts of the *Maupin* test to have been met with respect to this aspect of claim two.

This Court must also decide whether the procedural rules at issue constitute adequate and independent bases upon which to foreclose review of this claim. This task requires the Court to balance the state's interests behind each procedural rule against the federal interest in reviewing federal claims. *See Maupin v. Smith,* 785 F.2d at 138. Under this analysis, the procedural rules barring petitioner's claim that he was denied the right to present a defense constitute adequate and independent state grounds for denying relief. The state courts must be given a full and fair opportunity to remedy alleged constitutional defects. The time limitations for filing appeals and the requirement that all available claims be asserted at the first opportunity serve the state's interests in

12

finality and in ensuring that claims are adjudicated at the earliest possible opportunity. Further, the doctrine of *res judicata* is stated in unmistakable terms in numerous Ohio decisions and Ohio courts have consistently refused to review claims on the merits under that doctrine. *See State v. Cole*, *supra; State v. Ishmail, supra; State v. Perry, supra*.

Petitioner also asserts in claim two that he was denied a fair trial because the trial court constructively amended the indictment by "combining two separate enhancing specifications into a single enhancing factor,"and by giving improper jury instructions "on an element of the enhancing specification" that had previously been dismissed. *See Petition*. This claim is readily apparent from the face of the record and was properly raised on direct appeal; however, petitioner raised the claim in the context of plain error, and the state appellate court likewise reviewed the claim for plain error only, due to petitioner's failure to object:

> In his second assignment of error, Wilson contends that the trial court committed plain error when it instructed the jury on the elements of the enhancing specification. Wilson contends that the trial court granted his Crim.R. 29 motion for acquittal on the enhancing specification for serious physical harm to persons, and then prejudicially erred when it nonetheless instructed the jury on the elements of the specification.
>
> The State charged Wilson with the specification contained in R.C. 2921.331(C)(5)(a)(ii), which provides that an individual who violates R.C. 2921.331(B) is guilty of a third degree felony if "[t]he operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property." The State did not charge Wilson with the specification contained in R.C. 2921.331(C)(5)(a)(i), which applies when "[t]he operation of the motor vehicle by the offender was a proximate cause of serious physical harm to persons or property."
>
> When he moved for acquittal, Wilson asserted that the State failed to introduce evidence that his conduct "caused any serious physical harm to anybody, mailboxes, nothing," and that the State failed to

13

prove that he created a substantial risk of physical harm. The court found that the State presented circumstantial evidence that Wilson created a substantial risk of serious physical harm, but that the State presented no evidence that Wilson proximately caused serious physical harm to persons. Therefore the court, apparently under the impression from Wilson that the State charged Wilson with specifications under both R.C. 2921.331(C)(5)(a)(i) and R.C. 2921.331(C)(5)(a)(ii), granted Wilson's motion on the R.C. 2921.331(C)(5)(a)(i) specification.

The court specifically denied Wilson's motion on the specification related to whether Wilson created a substantial risk of serious physical harm. In its instructions to the jury, the court instructed the jury to determine whether Wilson's operation of his car "was a proximate or a direct cause of a substantial risk of serious physical harm to persons or property." Wilson did not object to the instructions.

The law requires a trial court to give the jury all instructions that are relevant and necessary for the jury to properly weigh the evidence and reach their verdict as fact finder. *State v. Comen* (1990), 50 Ohio St.3d 206, 553 N.E.2d 640, paragraph two of the syllabus. A defendant who fails to object to jury instructions before the jury retires to deliberate waives any error in the jury instructions. *State v. Williford* (1990), 49 Ohio St.3d 247, 551 N.E.2d 1279, citing *State v. Lane* (1976), 49 Ohio St.2d 77, 358 N.E.2d 1081, paragraph one of the syllabus. "A party may not assign as error the giving or the failure to give any instructions unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection." Crim.R. 30(A).
Although a defendant may have failed to raise a timely objection to an error affecting a substantial right, courts may notice the error. Crim.R. 52(B). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Landrum* (1990), 53 Ohio St.3d 107, 111, 559 N.E.2d 710. The plain error rule does not require reversal unless, but for the error, the outcome of the trial would clearly have been otherwise. See *State v. Underwood* (1983), 3 Ohio St.3d 12, 444 N.E.2d 1332; *State v. Long,* 53 Ohio St.2d at paragraph two of the syllabus.

Here, the specification charged, R.C. 2921.331(C)(5)(a)(ii), requires the jury to determine whether Wilson "created" a substantial risk of harm. Instead, the court instructed the jury to determine whether

14

> Wilson "proximately caused" a substantial risk of harm. Wilson did not object. As we found in considering Wilson's third assignment of error, the record contains evidence supporting a finding that Wilson created a substantial risk of harm. Upon review, we cannot say that the outcome of the trial would have been different if the trial court had used the precise language contained in R.C. 2921.331(C)(5)(a)(ii). Thus, Wilson has not shown that the jury instruction amounted to plain error. Accordingly, we overrule Wilson's second assignment of error.

Exhibit 6 to Return of Writ.

> Controlling precedent in our circuit indicates that plain error review does not constitute a waiver of state procedural default rules. *See Paprocki v. Foltz,* 869 F.2d 281, 284-85 (6th Cir.1989) (stating that the state court's review of a claim for "manifest injustice" did not constitute a waiver by the state of its contemporaneous objection rule).

*Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).  Further, the United States Court of Appeals for the Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground on which to preclude federal habeas review.  *See Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 424 (6th Cir. 2003); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001).

The Court concludes that petitioner has waived his right to present claim two for federal habeas corpus review.  He may still secure review of this claim on the merits if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violation that he alleges.  Petitioner has failed to establish either cause for his procedural default or actual prejudice from the alleged constitutional violation.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an

extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333. After review of the record, the Court does not deem this to be such a case.

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED,** and that petitioner's motions for summary judgment or judgment on the pleadings, Doc. Nos. 8 and 9, be **DENIED.**

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED**.

16

May 15, 2006                                          *s/Norah McCann King*
                                              United States Magistrate Judge
                                              Southern District of Ohio

17